IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOAN ASBURY and RUSSELL ASBURY,

     Plaintiffs,

vs.                                    Civ. No. 12-252 KG/RHS

MNT, INC and DEAN SATEREN,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On January 24, 2013, Defendants filed a Motion to Exclude Roger Allen (Motion to Exclude). (Doc. 46). On February 25, 2013, Plaintiffs filed a response and attached an affidavit by Roger Allen in support of their response. (Docs. 61 and 61-1). On March 13, 2013, Defendants filed a Motion to Strike Affidavit of Roger Allen Filed with Plaintiffs' Response to Defendants' Motion to Exclude Roger Allen (Motion to Strike). (Doc. 67). On March 13, 2013, Defendants filed a reply in support of their Motion to Exclude. (Doc. 68). On March 22, 2014, the Court granted, in part, Defendants' Motion to Strike, striking from Allen's affidavit those portions, which contain impermissible opinions. (Doc. 95). Having reviewed the Motion to Exclude, the accompanying briefs, and the evidence of record, the Court grants, in part, the Motion to Exclude for the following reasons.

I.     *Background*

     A.    *Plaintiffs' Complaint to Recover Damages for Personal Injury (Jury Trial Demanded) (Complaint) (Doc. 1)*

This is a personal injury case based on federal diversity jurisdiction. This case arises from a vehicular accident involving a sedan driven by Plaintiff Joan Asbury (Asbury) and a tractor-trailer driven by Defendant Dean Sateren (Sateren) and owned by Defendant MNT, Inc.

(MNT).  Plaintiff Russell Asbury is Asbury's husband.  Plaintiffs contend that Sateren caused

Asbury to lose control of her sedan and that he crashed the tractor-trailer into the sedan.

Plaintiffs allege that Asbury suffered serious injuries as a result of the collision.

Plaintiffs' Complaint contains two counts.  In Count I, Plaintiffs allege negligence and

negligence per se.  Specifically, Plaintiffs allege that Defendants had, and violated, the duties to:

"operate their vehicles in a safe manner and in compliance with all statutes, rules and regulations

governing the operation of vehicles, including tractor-trailers, upon New Mexico and interstate

roadways;" "operate the tractor-trailer at a speed that was safe under the road conditions;" "drive

a safe distance from other vehicles on the road;" and "use extreme caution in the operation of

their tractor-trailer under hazardous road conditions."  (Doc. 1) at 3-4.

In Count II, Plaintiffs allege safety violations, negligent operations, and aiding and

abetting.  Specifically, Plaintiffs allege that Defendants had, and violated, the duties to:

"maintain and operate the vehicle involved in the collision in conformance with applicable safety

rules, including the Federal Motor Carrier Safety Act (FMCSA) regulations and in such a way as

to not harm the public;" and "comply with all of the applicable safety rules, including FMCSA

regulations pertaining to the hiring of drivers, operation of trucks, maintenance of trucks, and

other activities on interstate highways."  (Doc. 1) at 5-6.  Plaintiffs further contend that MNT had

a duty to: "make sure its drivers, including [Sateren], were qualified to operate safely its tractor-

trailers in such a way as to not harm the public;" "train its drivers, including [Sateren], to operate

safely its tractor-trailers in such a way as to not harm the public;" and "require defendant Sateren

to comply with federal safety rules."  *Id.* at 5-6.

Asbury seeks past and future medical expenses as well as damages for "pain, suffering,

emotional distress, and reduced enjoyment of life and the curtailment of her social and physical

activities, and her ability to interact socially."  (Doc. 1) at ¶¶ 25, 43.  Russell Asbury seeks

present and future damages for "emotional distress due to the loss of or interference with the

society, companionship, and sexual relations resulting from the injury to his wife, Joan Asbury,

and for the loss of services."  *Id.* at ¶¶ 26, 44.

      *B.  Relevant Facts*[1]

         *1.  Defendants Dean Sateren and MNT, Inc.*

MNT is "an authorized for hire interstate motor carrier" stationed out of Kansas.  (Doc.

46-1) at 3.  On February 3, 2010, MNT employed Sateren as a commercial truck driver.  *Id.* at 4.

Generally, Sateren would make two trips per week out of Kansas for MNT. (Doc. 61-3) at 2

(depo. at 20).  When Sateren started as a commercial truck driver, he did not have any formal

training and did not attend commercial driving school.  *Id.* (depo. at 19-20).  Sateren currently

holds a Kansas Commercial Driver's License (CDL).  *Id.*  It was MNT's habit to not train its

drivers on trucking safety rules if it hired a driver who had experience or already held a CDL.

(Doc. 61-6) at 1 (depo. at 23-24).  MNT required a minimum of three years "over-the-road"

experience before it hired a driver.  *Id.*

    After hiring Sateren, MNT did not train him on winter driving, how to determine a safe

speed for icy conditions, or what percentage of his speed should be reduced for poor road

conditions.  (Doc. 61-3) at 3 (depo. at 19-20); (Doc. 61-4) at 4 (depo. at 58); (Doc. 61-5) at 2

(depo. at 69).  Additionally, MNT did not teach Sateren, nor was he aware, that there is a federal

safety rule for driving in hazardous conditions and as to what the Kansas CDL manual stated

about driving on wet, slick, or icy roads.  (Doc. 61-4) at 4 (depo. at 59-60).  MNT did not give

Sateren instructions on when to stop for icy roads and allowed Sateren discretion to make that

---

[1] Defendants did not properly submit evidence to support their allegations of fact in their Motion
to Exclude in accordance with D.N.M. LR-Civ 7.3(b).  In response, the Court ordered
Defendants to provide the Court with an amended statement of facts with pinpoint citations to

decision.  *Id.* (depo. at 61).  However, MNT held at least two safety meetings that Sateren

attended.  (Doc. 46-2) at 5 (depo. at 23-24).  One of the safety meetings, conducted on October

18, 2008, was on "Roadside Inspections, HOS/LOGS, Winter Driving."  *Id.*  On January 16,

2010, less than a month before the accident, MNT held a second safety meeting.  *Id.*  It is

unknown what topics were discussed at the second meeting.  *Id.*  Additionally, Sateren learned

how to determine a safe speed for icy conditions from his Kansas CDL Manual.  (Doc. 61-4) at 3

(depo at 58).  Sateren also testified that he learned to travel slower in poor road conditions.[2]  *Id.*

(depo. at 58-59).

### 2.    *The February 3, 2010, accident*

On February 3, 2010, at approximately 8:00 a.m., Asbury left Albuquerque, New Mexico

in her sedan traveling east on Interstate 40 towards Roswell, New Mexico.  (Doc. 98-1) at 1, 3.

The weather was clear and the roads were dry when she left Albuquerque, but the weather

changed, and the roads became rainy and snowy upon reaching Moriarty, New Mexico.  (Doc.

98-2) at 4.  Near Moriarty, Asbury became concerned about the deteriorating weather conditions

and called her husband for advice on how to proceed.  *Id.* at 2-3.  Asbury decided to continue

with her trip, but she placed her sedan in all-wheel drive, and drove slowly.  *Id.* at 3.

At approximately 9:15 a.m., Asbury approached the area between Interstate 40 mile-

markers 214 and 215, and the highway began to climb in elevation and curve to the north.  (Doc.

98-3) at 2.  This portion of the Interstate 40 roadway was snowy and icy.  (Doc. 98-2) at 1-2;

Doc 61-4) at 1 (depo. at 55).  Asbury noticed the tractor-trailer, driven by Sateren, some distance

behind her as she began to ascend the hill in the right-hand lane.  *Id.* at 1.

---

[2] It is unclear from Sateren's testimony where he learned this information.

Sateren was driving his tractor-trailer eastbound from Albuquerque to Clovis, New Mexico. (Doc. 98-4) at 2. Sateren saw Asbury's sedan ahead of him in the right lane. (Doc. 98-6) at 2. As Sateren approached Asbury's sedan, he observed that the snow and ice on the road had adversely affected his traction. (Doc. 61-5) at 1 (depo. at 66). Asbury was driving approximately thirty miles per hour, and Sateren was driving roughly fifty to sixty miles per hour. (Doc. 98-7) at 4-5, 7. Recognizing that Asbury's sedan was traveling slower than his tractor-trailer, Sateren moved to the left lane in order to pass Asbury's sedan. (Doc. 98-8) at 2.

Shortly after Sateren entered the left lane, at an unknown distance behind Asbury, Asbury testified that she "felt this tremendous force pushing me to get out of the way so that the driver of the truck could get up the incline."[3] (Doc. 67-1) at 2 (depo. at 70). Asbury then drifted off the road and hit the rumble strip on the right side of the highway. (Doc. 98-9) at 2; (Doc. 98-5) at 2. The rumble strip was slick and caused Asbury to lose control of her sedan. *Id.* at 3. When Sateren witnessed this, he let off the tractor-trailer's throttle and began to slow down; he did not fully break because the road was icy. (Doc. 98-9) at 2-3; (Doc. 61-3) at 4 (depo. at 47). The rear portion of Asbury's sedan hit the right side guardrail causing her to careen back across the right lane and into the left lane of traffic. (Doc. 67-1) at 3 (depo. at 74); (Doc. 98-5) at 5. The driver's side of Asbury's sedan then collided with the front of Sateren's tractor-trailer. (Doc. 98-5) at 5-6. After the collision, Sateren's tractor-trailer slid into the median of the highway and stopped. (Doc. 64-1) at 1 (depo. at 51 52).

*C.  Roger Allen's expert report*

---

[3] Throughout their Motion to Exclude, Defendants refer to the distance between Sateren's truck and Asbury's car as 150 feet at the time in which Asbury lost control of her car. *See, e.g.* (Doc. 46) at 2. The only reference to this distance on the record is found in Defendants' accident reconstruction specialist's expert report. *See* (Doc. 98-10) at 2. The Court disregards this calculation for the purpose of this Memorandum Opinion and Order and rather will rely on the testimony of the parties involved to determine the distance between the vehicles.

Plaintiffs intend to introduce the testimony of Roger Allen (Allen) as "a qualified expert on commercial motor vehicle and tractor-trailer safety." (Doc. 61) at 1. On October 22, 2012, Allen provided an expert report as required under Fed. R. Civ. P. 26. *See* (Doc. 46-1). In his expert report, Allen first summarizes the materials that he reviewed to form his opinions, indicating that he reviewed thirty different items. *Id.* at 1-2. Next, Allen summarizes his education and experience. *Id.* at 2-3. Allen then discusses the actions of MNT and of Sateren. *Id.* at 3-10. In his discussion, Allen proceeds to list fourteen Federal Motor Carrier Safety Regulations (FMCSR) violations that he alleges Defendants committed. *Id.* at 10. Finally, Allen lists his conclusions. *Id.* at 10-12.

Allen intends to testify that MNT was negligent because it did not adhere to certain regulations, and that Sateren was negligent because he was traveling with an empty trailer in the passing lane too fast for the hazardous weather conditions. Allen opines that Defendants violated the following FMCSRs: § 379.13, Disposition and Retention of Records; § 382.305, Random Testing; § 383.110, General Requirement; § 383.111, Required Knowledge; § 383.113, Required Skills; § 390.3(e) 1-2, General Applicability; § 390. 13, Aiding or Abetting Violations; § 391.25, Annual Inquiry and Review of Driving Record; § 391.51, General Requirements for Driver Qualification Files; §392.1, Scope of the Rule in this Part; § 392.2, Applicable Operating Rules; § 392.14, Hazardous Conditions, Extreme Caution; § 395.8(k), Retention of Driver's Record of Duty Status; and § 396.3 (c), Inspection, Repair and Maintenance. (Doc. 46-1) at 10.

II.    *Defendants' Motion to Exclude*

Defendants now move for the Court to exclude the following fourteen opinions from Allen's expert report:

1. "If MNT was seriously concerned about safety, it would have conducted a complete investigation into the collision and used the data to train its employees and to help prevent this type of event from happening again." (Doc. 46-1) at 6;

2. "This is a clear indication [MNT vice president Nathan Moeder] does not know the FMCSR and does not follow them." *Id.*;

3. "Dean Sateren was not acting as a safe and prudent commercial vehicle driver on February 3, 2010." *Id.* at 7;

4. "Mr. Sateren was driving his tractor-trailer on a snow and ice covered interstate without adjusting his speed for conditions," and Sateren was traveling at an unsafe speed for the weather conditions. *Id.* at 7-8;

5. "Commercial drivers should know how dangerous it is to operate on icy and snow packed roads." *Id.* at 7;

6. "Commercial drivers should know when driving on snow packed and icy roads they have to drive very cautiously until they have reached a safe location to pull over and wait for conditions to improve." *Id.*;

7. "Commercial drivers should never pass another moving vehicle in these types of conditions on the highway unless absolutely necessary, but if they must, they should be extremely careful when attempting to pass." *Id.*;

8. "With the roads becoming very icy, it becomes easy to cause other vehicles to slide and lose control because of the wind circulating off of a larger vehicle when the larger commercial vehicle passes a smaller vehicle at a greater speed." *Id.*;

9. "Sateren did not adjust his turning and braking to conditions, he did not adjust his speed properly to the conditions, and he did not adjust his 'space' to the conditions. Mr. Sateren should have slowed down to a crawl and should not have attempted to pass [] Asbury in snow and icy conditions." *Id.* at 9;

10. "If Mr. Sateren had pulled over when he first became aware of the icy conditions or had he been driving the appropriate speed for the conditions[,] he would not have been in a position to pass Asbury and would not have been involved in this accident." *Id.*;

11. Sateren "should not have even been operating in those conditions at all.' *Id.* at 11. "With the conditions that existed at the time of the collision, Mr. Sateren should have been parked in a safe location away from the roadway and should not have moved until the conditions of the road improved." *Id.*;

12.  "The responsibility of a professional commercial motor vehicle driver to avoid collisions goes beyond mere compliance with traffic laws.  The driver must follow the Defensive Driving Code, which is to drive in such a way that the driver commits no errors, and so controls the vehicle to make adjustments for changes in road, weather, and traffic conditions, and the mistakes other drivers make so they will not involve or trap the driver in a collision."  *Id.* at 9;

13.  "MNT and Dean Sateren must take responsibility for this collision and for the injuries and damages sustained by [] Asbury."  *Id*. at 10; and

14.  "In my opinion, this pattern and course of conduct was not only negligent but grossly negligent."  *Id.*

Defendants further argue that Allen should be prohibited from testifying that Defendants violated various FMCSRs and that Plaintiffs should not be allowed to disclose the publications that Allen relied on to form his opinions.

Defendants argue that the aforementioned opinions should be excluded because:  (1) Allen is not qualified; and Allen's opinions are (2) improper causation opinions; (3) irrelevant to the facts or claims of the case; (4) unreliable; (5) speculative; (6) supplant the role of the judge or the jury; and (7) inadmissible under Fed. R. Evid. 403.  Plaintiffs request a hearing "to present [Allen's] qualifications and answer questions."  (Doc. 61) at 15.  The Court determines it has sufficient evidence to evaluate Allen's testimony without a hearing.  *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1228 (10th Cir. 2003) ("[A] district court has discretion to limit the information upon which it will decide the *Daubert* issue.").

III.    *Standard of Review*

Fed. R. Evid. 702 governs the admissibility of expert witness testimony and provides that,

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the expert bears the burden of satisfying Rule 702 and establishing the admissibility of the testimony, which in this case falls on Plaintiffs. *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009).

Rule 702 imposes upon the Court a "gatekeeping" function with regard to the admissibility of expert opinions. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The objective of the gatekeeping obligation is to "ensure the reliability and relevancy of expert testimony . . . to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Second, the Court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The Court should liberally admit expert testimony and has broad discretion in deciding whether to admit or exclude expert testimony. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir.1995) (describing rule 702 as "liberal standard"); *Werth v. Makita Elec.*

*Works, Ltd.*, 950 F.2d 643, 647 (10th Cir.1991) (noting trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

IV.    *Discussion*

    A.   *Whether Allen is qualified as an expert to offer his proffered opinions*

Defendants challenge Allen's qualifications to render opinions relating to:  (1) who is responsible for the February 3, 2010, accident; and (2) whether Sateren was traveling too fast at the time of the accident.  The Tenth Circuit has held that "[a]s long as an expert stays 'within the reasonable confines of his subject area,' . . . a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight."  *Ralston*, 275 F.3d at 970 (alteration in original) (quoting *Compton v. Subaru of America, Inc.,* 82 F.3d 1513, 1520 (10th Cir. 1996), *overruled on other grounds by Kumho Tire Co.*, 526 U.S. at 147).  Therefore, the question is whether Allen's testimony regarding the February 3, 2010, accident is "within the reasonable confines" of Allen's subject area.

Allen's *curriculum vitae* (CV) demonstrates that he is qualified to offer testimony on general matters relating to the operation of tractor-trailers.  Allen has worked in the transportation industry for over forty-five years and has operated tractor-trailers in excess of two million miles.  (Doc. 98-11).  Allen has been in the transportation industry since 1959, working as a dispatcher, local delivery driver, contract driver, long haul driver, traffic/transportation manager, and safety director.  *Id.* at 2-5.  Since 1995, Allen has worked as a safety transportation consultant working with attorneys in litigation regarding the FMCSRs, trucking safety, and industry standards.  *Id.* at 2.  Allen currently holds a CDL license, which has all the available endorsements, and is a member of the Texas Board of Private Investigators.  *Id.* at 1.  Allen is also active in attending relevant courses pertaining to the trucking industry.  *Id.* at 1-2.  Finally,

Allen has testified as an expert in the field of transportation safety between forty and fifty occasions, seven of which occurred in Federal Court.

Defendants, however, argue that Allen's opinion about "responsibility" is "nothing more than a causation opinion," and Allen is not qualified to render an opinion on causation because he is not trained in accident reconstruction.  (Doc. 46) at 8.  When analyzing Allen's qualifications, the Court is mindful that a proposed expert "may qualify as an expert by knowledge, skill, experience, training, or education" and "should not be required to satisfy an overly narrow test of his own qualification."  *United States v. Gutierrez-Castro*, 805 F. Supp. 2d 1218, 1225 (D.N.M. 2011) (citing *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir.1974)).  Thus, taking into account Allen's training, experience, and remembering that whether Allen "possesses the requisite expertise is separate from the question of whether his proposed testimony satisfies the reliability component of the analysis under *Daubert* and Rule 702," the Court concludes that Allen has the expertise necessary to opine regarding responsibility for the February 3, 2010, accident and whether Sateren was traveling too fast given the weather conditions.  *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1101 (W.D. Okla. 2009) *aff'd*, 405 F. App'x 296 (10th Cir. 2010).

B.  *Whether Allen's opinions are admissible*

Despite Allen being qualified to render opinions regarding the trucking industry, his conclusions are not immune from further scrutiny.  The Court will address each of Defendants' arguments for excluding Allen's opinions on the basis of admissibility.

1.    *Whether any of Allen's opinions are improper causation opinions*

Defendants attack Allen's causation opinions, arguing that Allen:

has admittedly ignored facts necessary to form a reliable opinion as to causation. Mr. Allen testified he has not been to the scene of the accident, is not familiar

11

> with the area where the accident occurred, and did not know at what point the roads became icy. He has no opinion as to Asbury's driving, and solely focused on Mr. Sateren's actions. He has no idea why Asbury lost control of her vehicle and slid into the path of Mr. Sateren.

(Doc 46) at 8-9 (internal citations omitted).

Unlike a lay witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. *See* Fed. R. Evid. 702, 703; *Daubert*, 509 U.S. at 592. Defendants' perceived weaknesses in Allen's causation testimony go to the weight of the testimony, not its admissibility. *See Tingey v. Radionics*, 193 Fed. App. 747, 767 (10th Cir. 2006). Thus, the Court will not exclude Allen's testimony based on causation.

> 2. *Whether any of Allen's opinions are irrelevant to Plaintiffs' claims or the facts*

Defendants contend that Allen's following opinions are irrelevant to Plaintiffs' claims or the facts of the case: (1) any opinion regarding Sateren passing Asbury's sedan; (2) all opinions regarding violations of the FMCSRs; and (3) any opinion concerning MNT's failure to conduct an investigation.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable that it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "[A] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," but it only need to have "*any* tendency" to do so. *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (emphasis added). The standard for relevance is liberal. *United States v. Leonard*, 439 F.3d 648, 651 (10th Cir. 2006) ("Rule 401 is a liberal standard."); *see also United States v. Cerno*, 529

F.3d 926, 934 n.5 (10th Cir. 2008) ("[T]he threshold for relevance under the Federal Rules of Evidence is not a high one.").

Although the threshold burden is low, the rules do "not sanction the carte blanche admission of whatever evidence a [party] would like." *Jordan*, 485 F.3d at 1218. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. Evidence may be unfairly prejudicial if it would likely provoke an emotional response or otherwise affect the jury's attitude toward a particular matter. *See United States v. Rodriguez,* 192 F.3d 946, 951 (10th Cir. 1999). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000). The decision to admit or exclude evidence pursuant to Rule 403 is within the Court's discretion. *See United States v. Lugo*, 170 F.3d 996, 1005 (10th Cir. 1999). The Court, nevertheless, must be mindful that the "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010).

### a. *Allen's opinion regarding Sateren passing Asbury's sedan*

Defendants argue that Allen's opinions based on Sateren passing Asbury are not relevant because Sateren was not passing Asbury at the time of the accident. Defendants misperceive the facts in this case relating to the distance between the vehicles at the time of the accident, including that "[a]t the time Plaintiff lost control of her car, the MNT truck was well behind Plaintiff's car." (Doc. 46) at 10. Asbury and Sateren testified that they were unsure of the distance between the two vehicles at the time of the accident. More importantly, Sateren

testified that he was in the act of passing Asbury at the time of the accident.  Therefore, Allen's testimony regarding Sateren passing Asbury has the tendency to make the facts surrounding the accident more or less probable than it would be without the evidence.  Hence, the Court will not exclude Allen's opinions regarding Sateren passing Asbury on the basis that they are irrelevant.

### b.   Allen's opinions that Defendants violated the FMCSRs

Defendants contend that Allen's opinions regarding Defendants' violations of the FMCSRs are irrelevant, including that (1) Sateren violated 49 C.F.R. § 392.14; (2) MNT violated FMCSRs prior to the accident; (3) MNT violated the FMCSRs after the accident; and (4) Allen redefined the terms "hazardous weather" and "preventable accident."

### 1.   Allen's opinion that Sateren violated 49 C.F.R. § 392.14

Defendants seek to exclude Allen's opinion that Sateren violated 49 C.F.R. § 392.14 because neither Sateren's visibility nor the traction of the tractor-trailer were adversely affected at the time of the accident.  Defendants further contend that Sateren slowed his speed and was driving cautiously at the time of the accident.  Section 392.14 states in relevant part,

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction.  Speed shall be reduced when such conditions exist.  If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated.

The facts of the case establish that it was raining and snowing on the day of the accident. Sateren testified that the roads were icy, and Asbury asserts that she lost control of her vehicle because the rumble strip was slippery due to the weather.  Despite the weather, Sateren decided to continue to operate his tractor-trailer.  Additionally, Sateren's speed at the time of the accident is unknown.  Accordingly, Allen's references to Section 392.14 has the tendency to make it more or less probable that Defendants' acted negligently at the time of the accident than it would

14

without the evidence and that fact is of consequence in determining Defendants' liability. Therefore, Allen's references to Section 392.14 are relevant to the facts of this case.

Furthermore, Allen's opinion of industry standards, practices, and Section 392.14 is also relevant to Plaintiffs' negligence per se claims to assist the jury in determining whether Defendants' violated Section 392.14. *See Thompson v. Potter*, 2012-NMCA-014, 268 P.3d 57, 66 (citation omitted) (stating that in negligence per se claim plaintiff must establish that defendant violated statute in question); *see also BNSF Ry. Co. v. LaFarge SW., Inc.*, 2009 WL 413601 *3 (D.N.M.) (permitting expert's testimony concerning alleged federal regulation violations).

2. *Allen's opinion that MNT violated FMCRs prior to the accident*

Defendants seek to exclude Allen's discussion of the requirement of MNT's required annual inquiry and review of Sateren's motor vehicle record (MVR) pursuant to 49 C.F.R. § 391.25. Defendants argue that on January 12, 2010, less than a month prior to the accident, they completed an annual inquiry and review of Sateren's MVR. According to Defendants, the inquiry showed Sateren had a clean driving record. Defendants further assert that Allen's references to the National Safety Council's booklet, *Resource Guide, The Dynamics of Dynamics of Safety* should be excluded as irrelevant because Sateren had a clean driving record at the time of the accident. Additionally, Defendants contend that Allen's opinions that MNT should have provided "additional training and safety meetings" is irrelevant because Allen fails to demonstrate a connection between a lack of training to the facts of the accident. Plaintiffs contend that the absence of prior reviews and a lack of safety meetings and/or trainings are relevant to demonstrate Defendants' negligence.

Section 391.25 mandates, in relevant part, that "each motor carrier shall, at least once every 12 months," complete the following: (1) "make an inquiry to obtain the motor vehicle record of each driver it employs;" (2) "review the motor vehicle record of each driver it employs to determine whether the driver meets minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle pursuant to § 391.15;" and (3) maintain a copy of the MVR in the employed driver's qualification file.

According to Allen's expert report, the *Resource Guide, Dynamics of Fleet Safety*, provides,

> [a]lthough it is not absolute, it is generally considered that a person's past driving performance and safety is an indication of future performance.  Recent research does support the assumption that past problems related to driving do manifest themselves in current and future performance.  This makes the MVR check a crucial part of the selection process, particularly since courts are increasingly holding the companies liable for negligence of their drivers. . . .  Annual MVR checks should be made on all occupational drivers as a condition of employment.  The practice is strongly advised to eliminate problems such as a company not knowing that an employee's license has been suspended.

(Doc. 46-1) at 4.

The Court agrees with Plaintiffs that Allen's testimony is relevant.  Plaintiffs' claims stem from an alleged breach of duty and FMCSR violations prior to and on February 3, 2010.  In his expert report, Allen states that Sateren's qualification file only contains a January 12, 2010, MVR review, an alleged violation of Section 391.25. Allen's testimony concerning alleged FMCSR violations is somewhat relevant to the question of whether MNT breached its duty to ensure Sateren was a qualified driver prior to and at the time of the accident.  The Court cannot say that Allen's testimony has no tendency to make prior violations more probable than it would be without the evidence. Accordingly, Allen's testimony regarding alleged FMCSR violations, prior to and on

February 3, 2010, meets the minimum threshold for relevancy under Rule 401. *See Cerno*, 529 F.3d at 934 n.5; *see also Leonard*, 439 F.3d at 651 ("Rule 401 is a liberal standard.").

Additionally, Allen's discussion of Section 391.25 is relevant to Plaintiffs' negligence per se claims that Defendants' violated FMCSRs. Allen's opinions that Defendants' violated Section 391.25 at the time of the accident make that fact more probable than without the testimony and that fact is of consequence to determining MNT's liability.

Last, as noted earlier, Allen's experience and training qualifies him to opine on trucking industry standards and practices and whether MNT's safety meetings and trainings conformed to such standards. Allen's testimony of the trucking industry standards and practices may be helpful to the juror, as the average juror may not be knowledgeable about the practices. *See* Fed. R. Evid. 702. Accordingly, Allen's testimony of industry standards and practices has the tendency to make the facts surrounding the accident more or less probable than it would without the evidence. Thus, the Court will not exclude Allen's opinions of trucking industry safety meetings and training.

### 3. *Allen's opinion that MNT violated FMCSRs after the accident*

Allen opines that MNT violated the following FMCSRs post-accident: 49 C.F.R. § 396.3, Inspection, Repair, and Maintenance; 49 C.F.R. § 395.8 (k), Driver's Record of Duty Status; and 49 C.F.R. § 379.13, Records Required to be Retained.

Defendants contend that Section 396.3 is irrelevant because the condition and maintenance of the tractor-trailer is not in dispute. In contrast, Allen contends that Section 396.3

is relevant because MNT failed to retain the tractor-trailer's maintenance records for the requisite period and, therefore, "[t]his is a clear indication [MNT's vice president] does not know the FMCSR and he does not follow them."  (Doc. 46-1) at 6.

Defendants further assert that all alleged post-accident violations should be excluded for two reasons.  First, Allen's testimony is inadmissible under Fed. R. Evid. 403 because it creates unfair prejudice and will mislead the jury.  Second, Fed. R. Evid. 404(b) precludes evidence of other wrongs to prove character and action in conformity with character.  In response, Plaintiffs argue that Allen's testimony is relevant to demonstrate Defendants' "sloppiness and lack of concern for industry standard safety rules."  (Doc 61) at 12.

 Section 396.3 states, in relevant part, that "[t]he records required by this section shall be retained where the vehicle is housed or maintained for a period of one year and for six months after the vehicle leaves the motor carrier's control."  Section 395.8(k) states, in relevant part, that "[e]ach motor carrier shall maintain records of duty status and all supporting documents for each driver it employs for a period of six months from the date of receipt."  Section 379.13 states that,

> [r]ecords referenced to this note shall be maintained as determined by the designated records supervisory official.  Companies should be mindful of the record retention requirements of the Internal Revenue Service, Securities and Exchange Commission, State and local jurisdictions, and other regulatory agencies.  Companies shall exercise reasonable care in choosing retention periods, and the choice of retention periods shall reflect past experiences, company needs, pending litigation, and regulatory requirements.

Assuming Allen's testimony satisfies the low relevancy threshold, Allen's testimony of alleged post-accident FMCSR violations is excluded pursuant to Rule 403.  First, the risk that the jury may find Defendants liable upon the mere allegation that Defendants violated regulations, at some point in time after the accident, is clearly present.  Moreover, references to post-accident violations, that are not part of the

Plaintiffs' claims, have the definite potential to confuse the jury.  Lastly, Allen's

testimony has little probative value since Plaintiffs' claims arise before or on February 3,

2010.  *See Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995) (citation omitted) (unfair

prejudice includes evidence that "will excite the jury to make a decision on the basis of a

factor unrelated to the issues properly before it.").  Thus the Court concludes that, under

Rule 403, it will exclude Allen's testimony regarding Defendants' alleged FMCSR

violations after February 3, 2010, because the danger of unfair prejudice, confusion of the

issues, or misleading the jury substantially outweighs its probative value.

Alternatively, the Court finds that Allen's testimony is excluded under Rule 404.

"Evidence of a [party's] character or character trait is not admissible to prove that on a

particular occasion the [party] acted in accordance with the character or trait."  Fed. R.

Evid. 404(a).  Prohibited uses of character evidence include "evidence of a crime, wrong,

or other act."  Fed. R. Evid. 404(b).  Character evidence, however, "may be admissible

for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident."  *Id.*  Here, Plaintiffs proffer

Allen's testimony to demonstrate Defendants' "sloppiness" and "lack of concern" for

safety regulations.  Plaintiffs have failed to articulate a proper purpose for which they

offer the evidence.  Such evidence is inadmissible under Rule 404.  Therefore, the Court

finds that Allen's testimony of alleged post-accident FMCSR violations is excluded.

4.   *Allen's opinions regarding the definitions of "hazardous*
*weather" or "preventable accident"*

Defendants argue that Allen should not be allowed to testify concerning:  (1) the meaning

of "hazardous conditions" or that it has a meaning different from that set out in 49 C.F.R. §

392.14; or (2) the meaning of "preventable accident" or provide a definition different from that

provided in 49 C.F.R. § 385.3.  Plaintiffs respond arguing that Allen is not redefining the terms but rather that Allen "relied on the undisputed fact that the roads were icy and hazardous."  (Doc. 61) at 12.

"[E]xclusion of expert testimony is appropriate if the terms used have a separate, distinct, and special legal meaning."  *Hogan v. Am. Tel. & Tel. Co.,* 812 F.2d 409, 411 (8th Cir. 1987).  "Because the judge and not a witness is to instruct the factfinder on the applicable principles of law, exclusion of opinion testimony is appropriate if the terms used have a separate, distinct, and special legal meaning."  *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) (cited in *Hogan*, 812 F.2d at 411-12).

In his expert report, Allen provides the definition of "hazardous conditions" as set forth in 49 C.F.R. § 392.14.  *See* (Doc. 46-1) at 8; 49 C.F.R. § 392.14 ("Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction.").  Therefore, because Allen relies on Section 392.14 to define "hazardous condition," the Court will not exclude Allen's definition of that term.

Allen, however, provides a definition of "preventable accident" that is different than what is defined in Section 385.3.  See (Doc46-1) at 11; 49 C.F.R. § 385.3 ("Preventable accident on the part of a motor carrier means an accident (1) that involved a commercial motor vehicle, and (2) that could have been averted but for an act, or failure to act, by the motor carrier or the driver.").  The Court, accordingly, will not permit Allen to provide the jury with a definition of preventable accident that is different from the definition in Section 385.3.

          c.   *Allen's opinion that MNT failed to conduct an investigation after the accident*

Allen further contends that MNT did not conduct an investigation into the crash or attempt to determine whether the accident was preventable. Allen relies upon the National Safety Council's *Resource Guide, The Dynamics of Fleet Safety*, Element 1 Data Analysis & Problem Identification to indicate that a trucking company should conduct post-accident reviews. *See* (Doc. 46-1) at 6. Based on these passages, Allen concludes that "[i]f MNT was seriously concerned about safety they would have conducted a complete investigation into this collision and used the data to train their employees and to help prevent this type of event from happening again." *Id.* Defendants contend that Allen's references and opinions regarding actions MNT took after the accident are irrelevant and should be excluded. Alternatively, Defendants assert that Allen's testimony is inadmissible under Rule 407.[4]

Defendants are correct in their assertion that Allen's statement is irrelevant, and thus inadmissible. Whether MNT conducted an investigation or held trainings after the accident has no tendency to make it more probable that MNT was negligent, prior to or at the time of the accident, than without the evidence. Thus, the Court finds that Allen's opinion of MNT's failure to take remedial action is not relevant and shall be excluded.

3.      *Whether many of Allen's opinions are unreliable*

Defendants contend that many of Allen's opinions are unreliable because: (1) he fails to consider alternative explanations as to the cause of the accident; and (2) Allen does not sufficiently connect the proposed testimony to the facts of the case. For example, Defendants argue that "Allen's report does not mention the fact that Mrs. Asbury lost control of her car and slid into Mr. Sateren's lane of travel." (Doc. 46) at 19. Thus, Defendants assert that because Allen offers causation opinion, "but has failed to consider alternative explanation, his opinions

---

[4]  In their response, Plaintiffs fail to address Defendants' Rule 407 argument. Because the Court finds that Allen's testimony is inadmissible under Rule 401, the Court does not need to address Defendants' Rule 407 assertion.

are unreliable and must be excluded." *Id.* Defendants do not specify which of Allen's opinions the Court should exclude as unreliable.

Allen's failure to rule out alternative causes for the accident go to only the weight of his opinions about the cause of the accident, and have no bearing on the admissibility of his opinion. *See McDonald v. N. Am. Specialty Ins. Co.*, 224 Fed. App. 761 (10th Cir. 2007) (expert's admissions that he could not rule out alternative cause of damage to plaintiff's property went only to weight of his causation opinion and had no bearing on admissibility); *Goebel v. Denver and Rio Grande Western R.R. Co.,* 346 F.3d 987, 998–99 (10th Cir. 2003) (expert's failure to rule out all possible alternative causal sources does not render testimony inadmissible).

Likewise, any weakness in Allen's connection between his opinions and the facts goes towards the weight of the opinion. *See Subaru of Am., Inc.,* 82 F.3d at 1518 (stating that if there is logical basis for expert's opinion, weaknesses in underpinnings of opinion go to weight and not admissibility); *see also Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, the Court denies Defendants' request to exclude Allen's testimony because of the lack of alternative explanations and insufficient connections between his opinions and facts of the case.

4.    *Whether many of Allen's opinions are speculative*

Defendants contend that Allen "has no actual evidence that any of Defendants' actions or inaction caused or could have prevented the accident, and opinions based on unsupported speculation do not qualify as an expert opinion." (Doc. 46) at 23. Defendants note that Allen did not evaluate "how turning, braking or space conditions had anything to do with this accident," or "what speed Mr. Sateren was actually traveling or what speed he could have been

22

traveling to avoid Asbury spinning into his lane."  *Id.*  As such, Defendants contend that Allen speculates that Sateren did not properly adjust his turning, braking, speed, or space for the weather conditions.  Defendants further argue that Allen speculates that if Sateren had been driving the appropriate speed for the conditions he would not have been in a position to pass Asbury and would not have been involved in this incident.

"It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."  *Goebel v. Denver & Rio Grande Western R.R. Co*., 215 F.3d 1083, 1088 (10th Cir. 2000).  An expert opinion must be based on facts that enable the expert "to express a reasonably accurate conclusion as opposed to conjecture or speculation [but] absolute certainty is not required."  *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citation omitted); *see also Robinson v. Missouri Pac. R.R. Co.*, 16 F.3d 1083, 1089–90 (10th Cir.1994) (when expert's opinion had some basis in fact, jury could determine whether testimony was helpful). The Court, generally, should focus on the expert's methodology rather than the expert's conclusions.  Nevertheless, more than "the ipse dixit of the expert" must connect the expert's conclusions to the existing data.  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Black's Law Dictionary* 905 (9th ed. 2009) (defining *ipse dixit* as "[s]omething asserted but not proved").

Allen's opinions regarding Sateren's adjustment of his turning, breaking, speed, and space to the incremental weather conditions is based on testimony from Sateren and Asbury regarding the icy conditions of the road and Sateren's testimony about the speed he was traveling.  Allen, therefore, formed his opinions regarding whether Sateren properly reacted to the roadway conditions on the basis of the facts of this case.  His opinions are not unsupported

statements that rest solely on his own authority.  Hence, the Court will not exclude Allen's

abovementioned opinions based on the opinions being speculative.

      5.      *Whether many of Allen's opinions supplant the role of the judge or jury*

Defendants argue that "many of Allen's opinions are likely to supplant the judge's role as

the instructor of the law and legal conclusions to be drawn in the case or to supplant the jury's

role in determining what the facts establish." (Doc. 46) at 24.  Defendants argue that such

opinions include:

      1.  MNT's "pattern and course of conduct was not only negligent but grossly negligent." (Doc. 46-1) at 10.

      2.  Sateren's "conduct was not only negligent but in my opinion was careless and reckless." *Id*. at 11;

      3.  Sateren "was driving much too fast for the condition of the road." *Id*.

      4.  "With the conditions that existed at the time of this collision, Mr. Sateren should have been parked in a safe location away from the roadway and should not have moved until the conditions of the road improved." *Id.*;

      5.  "MNT and Dean Sateren must take responsibility for this collision and for the injuries and damages sustained by Joan Asbury." *Id.* at 10.

      6.  MNT violated federal regulations, including that it did not properly qualify Mr. Sateren before hiring him and did not provide him training. *Id.* at 10 (Allen lists fourteen FMCSR violations).

      7.  MNT was "grossly negligent" for not providing Sateren with winter driving training. *Id.* at 10;

      8.  The accident was preventable. *See generally* (Doc. 46-1).

"Generally, an expert may not state his or her opinion as to legal standards nor may he or

she state legal conclusions drawn by applying the law to the facts." *Christiansen v. City of*

*Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (internal quotation marks and citation omitted).

While an expert may not testify to legal conclusions, "Fed. R. Evid. 704(a) allows an expert

witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact." *Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992) (citing *A.E. ex rel. Evans v. Independent Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)).

In the present case, the ultimate legal questions are whether Sateren's negligence caused the accident, and whether MNT properly trained Sateren or violated various safety regulations, which led to the accident.  Allen's opinions answer these questions.  His opinions (1-8) stated above are legal conclusions drawn by application of the law to the facts of this case, and will not be permitted.  *See Christiansen*, 322 F.3d at 1283.

6.      *Whether many of Allen's opinions are inadmissible under Rule 403*

Defendants argue that "[t]he small probative value Mr. Allen's opinions may have is substantially outweighed by the [danger] that they will cause unfair prejudice to Defendants." (Doc. 46) at 26.  Defendants generally argue that all of Allen's opinions are impermissible under Fed. R. Evid. 403.  Plaintiffs respond by arguing that the probative value of Allen's opinions outweighs any unfair prejudice.  Plaintiffs contend that "[i]t is unlikely that anyone will be allowed to remain on the jury who is closely connected to a motor carrier or the commercial trucking industry" and, therefore, Allen should be allowed to give his opinions on the topic. (Doc. 61) at 14.

Defendants' motion fails to articulate how Allen's individual statements potentially create unfair prejudice, confusion, or may mislead the jury.  Allen's opinions are not unfairly prejudicial simply because they are unfavorable to MNT.  *See United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (stating that "[e]vidence is not unfairly prejudicial simply because it is damaging to an opponent's case.") (quoting *United States v. Curtis*, 344 F.3d 1057,

1067 (10th Cir. 2003)). Hence, the Court concludes that, generally, Allen's relevant opinions are not unfairly prejudicial, nor will the opinions create confusion or mislead the jury. Therefore, the Court will not, generally, exclude Allen's opinions pursuant to Fed. R. Evid. 403, unless otherwise ordered.

Defendants also more specifically contend that Allen's testimony about "Kansas law or policy or guidelines" and the Kansas CDL manual are "not relevant to or probative of New Mexico law or the issues in this case." (Doc. 46) at 26. Plaintiffs assert that Defendants' attempt to argue about Kansas law "is simply a red herring" because Sateren holds a Kansas CDL, the Kansas CDL manual was Sateren's "source of training," and all of the relevant portions of the CDL manuals of Kansas and New Mexico are identical. (Doc. 61) at 14-15.

In the alternative, Defendants argue that the Kansas Commercial Driver's License Manual and other publications or guidelines should not be disclosed to the jury under Fed. R. Evid. 403 because their prejudicial value substantially outweighs their probative value. Defendants argue that the content of the following "publications should not come before the jury:" (1) *Resource Guide, The Dynamics of Fleet Safety*, by the National Safety Council; (2) *Fleet Management Pro, You're A to Z Guide to Managing a Fleet Operation*, by J.J. Keller & Associates; (3) *A Motor Carrier's guide to Improving Highway Safety*, by the U.S. Department of Transportation Federal Motor Carrier Safety Administration; (4) *Preventable Accident Manual*, by the U.S. Department of Transportation; (5) *A Guide to Determine Motor Vehicle Accident Preventability*, by the National Safety Council; and (6) the Kansas Commercial Driver License Manual. (Doc. 46) at 21.

Defendants argue that "the various manuals, guidelines and publications [Allen] cites to and quotes in his report should be excluded under [] Rule 703. Admission of these publications

26

would be misleading to the jury." (Doc. 46) at 21-22. Defendants also contend that New Mexico law sets the standard of care for this case, and it is not set by any of the abovementioned publications. Plaintiffs respond by arguing that the Kansas Commercial Driver's License Manual should be disclosed to the jury because: (1) Sateren possessed a Kansas CDL; and (2) Sateren testified that he learned, in part, how to drive his tractor-trailer from studying the Kansas Commercial Driver's License Manual.

First, Allen's testimony regarding Kansas law, Kansas policy, Kansas guidelines, the Kansas Commercial Driver's License Manual, and other publications or guidelines is admissible under Rule 403. The probative value of Allen's testimony of this material is high. The jury should be aware of the resources Allen relied upon to form his opinions and why he utilized those particular resources. Knowing this information would assist the jury in determining Allen's credibility and the weight to give his testimony. Additionally, the unfair prejudicial effect of this information is low. Regarding Kansas law, Kansas policy, Kansas guidelines, and the Kansas Commercial Driver's License Manual, any confusion they may cause the jury can easily be dispelled during cross-examination or a limiting instruction, if necessary. *See* Fed. R. Evid. 105. The probative value of this information substantially outweighs its minor unfair prejudicial effect. Therefore, the Court will not bar Allen's testimony of Kansas law, Kansas policy, Kansas guidelines, or any resources Allen may have utilized to form his opinions, including the Kansas Commercial Driver's License Manual.

Second, while the Kansas Commercial Driver's Manual and other publications and guidelines are not admissible for substantive purposes, the information may be disclosed to the jury pursuant to Rule 703. Rule 703 provides that, if the facts and data that an expert witness relies upon are inadmissible, "the proponent of the opinion may disclose them to the jury only if

27

their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. The probative value of disclosure of this material is high. As discussed above, the jury should be aware of the materials Allen utilized to form his opinion and may use this information to weigh Allen's opinions and credibility. Conversely, the prejudicial effect is minor. If necessary, any confusion to the jury may be resolved with a limiting instruction. *See* Fed. R. Evid. 105. Accordingly, the Court will not bar Plaintiffs from disclosing to the jury Allen's sources of information.

## V.    *Conclusion*

The Court concludes that Allen has the appropriate qualifications to testify in this case, given his years of experience, education, and training. The Court also finds that Allen's expert report does not contain improper causation opinions, unreliable opinions, speculative opinions, or, generally, inadmissible opinions pursuant to Rule 403. In addition, the Court finds that Allen's opinions concerning Sateren passing Asbury's vehicle and Defendants' alleged violations of FMCSR and safety training prior to the February 3, 2010, accident are relevant to Plaintiffs' claims and, therefore, not excludable. Further, the Court finds that Allen's definition of "hazardous conditions" pursuant to 49 C.F.R. § 392.14 is proper. The Court, however, concludes that Allen's opinions of Defendants' FMCSR violations post-February 3, 2010, and MNT's failure to conduct an accident investigation are improper and, thus, are excluded. The Court also concludes that Allen's definition of "preventable accident" and conclusions pertaining to the ultimate legal questions before the jury are impermissible.

IT IS ORDERED that Defendants' Motion to Exclude (Doc. 46) is granted, in part, in that the following specific opinions are excluded from Allen's expert report and trial testimony:

1.    "This is a clear indication [MNT vice president Nathan Moeder] does not know the FMCSR and does not follow them." (Doc. 46-1) at 6;

28

2. Allen's opinion that MNT violated FMCSRs after February 3, 2010. *Id.* at 6-7;

3. Allen's definition of "preventable accident" that differs from 49 C.F.R. § 385.3. *Id.* at 11;

4. Allen's opinion that MNT failed to investigate the February 3, 2010, accident or take subsequent remedial measures. *Id.* at 6;

5. "If MNT was seriously concerned about safety, it would have conducted a complete investigation into the collision and used the data to train its employees and to help prevent this type of event from happening again." *Id.* at 6;

6. Allen's legal conclusion that MNT's "pattern and course of conduct was not only negligent but grossly negligent." *Id.* at 10.

7. Allen's legal conclusion that Sateren's "conduct was not only negligent but in my opinion was careless and reckless." *Id.* at 11;

8. Allen's legal conclusion that Sateren "was driving much too fast for the condition of the road." *Id.*

9. Allen's legal conclusion that "[w]ith the conditions that existed at the time of this collision, Mr. Sateren should have been parked in a safe location away from the roadway and should not have moved until the conditions of the road improved." *Id.*;

10. Allen's legal conclusion that "MNT and Dean Sateren must take responsibility for this collision and for the injuries and damages sustained by Joan Asbury." *Id.* at 10.

11. Allen's legal conclusion that MNT violated federal regulations, including that it did not properly qualify Mr. Sateren before hiring him and did not provide him training. *Id.* (Allen lists fourteen FMCSR violations);

12. Allen's legal conclusion that MNT was "grossly negligent" for not providing Sateren with winter driving training. *Id.*; and

13. Allen's legal conclusion that the accident was preventable. *See generally*
     (Doc. 46-1).

_____
UNITED STATES DISTRICT JUDGE